## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

|  |  |  |
|---|---|---|
| | * | |
| **ROCKVILLE CARS, LLC,** *et. al.* | * | |
| | * | |
| Plaintiffs, | * | |
| | * | |
| v. | * | Civil No. PJM 15-3375 |
| | * | |
| **CITY OF ROCKVILLE,** | * | |
| **MARYLAND** *et. al.* | * | |
| | * | |
| Defendants. | * | |

### MEMORANDUM OPINION

Rockville Cars, LLC and Priority 1 Automotive Group, Inc. (collectively Plaintiffs) have sued the City of Rockville, Maryland and Robert L. Purkey Jr. in his personal capacity (collectively Defendants). Plaintiffs, who operate a BMW automobile dealership in Rockville, contend that Defendants deprived them of their procedural due process rights under the Fourteenth Amendment to the U.S. Constitution, made actionable pursuant to 42 U.S.C. § 1983. Defendants did so, say Plaintiffs, when they issued a "Suspension of Building Permit – Stop Work Order," which halted Plaintiffs' construction of a new BMW show room.

After Defendants filed a Motion to Dismiss the Amended Complaint, or, in the Alternative, Motion for Summary Judgment, ECF No. 23,[1] Plaintiffs filed a Response in Opposition and Cross-Motion for Partial Summary Judgment and Motion for Discovery. ECF No. 26. In the spring of last year, the Court held a hearing on the cross-motions. ECF No. 29.

---

[1] Rockville Cars, LLC filed its original complaint (ECF No. 1) on November 4, 2015. Defendants filed a Motion to Dismiss (the Complaint) or, in the Alternative, Motion for Summary Judgment (ECF No. 6), and Plaintiffs filed a Response in Opposition and Cross-Motion for Partial Summary Judgment (ECF No. 10). Before the Court could rule on the Motion, Plaintiffs filed an Amended Complaint (ECF No. 21). Accordingly, on May 31, 2016, the Court declared Defendants' Motion to Dismiss (the Complaint) or, in the Alternative, Motion for Summary Judgment (ECF No. 6) and Plaintiffs' Response in Opposition and Cross-Motion for Partial Summary Judgment (ECF No. 10) moot because both were filed prior to Plaintiffs' Amended Complaint. (ECF No. 29).

Having considered the parties' filings and oral argument, the Court will **GRANT** Defendants' Motion to Dismiss, ECF No. 23. Accordingly, Plaintiffs' Amended Complaint, ECF No. 21, will be **DISMISSED WITH PREJUDICE**. Plaintiffs' Cross-Motion for Partial Summary Judgment and Motion for Discovery, ECF No. 26, will be **DENIED**.

## I. FACTS[2] AND PROCEDUREAL HISTORY

Plaintiffs sell new and used BMW automobiles. Am. Compl. ¶ 6, ECF No. 21. They possess a leasehold interest in real property bearing the address 1350 Rockville Pike, Rockville, Maryland 20852 (the Property). *Id*. The Property is owned in fact by a third party, Robin Tang. *Id*. ¶ 17. Plaintiffs acquired their lease of the Property for the purpose of developing a show room for the luxury BMW cars they sell. *Id*. ¶ 7. The Property had previously been used as a restaurant and small furniture retail store. *Id*. ¶ 8.

In pursuit of their intention to develop the show room, Plaintiffs were required to submit the following: (1) a "Site Plan Application" to the City of Rockville's Department of Community Planning and Development Services (City Planner), in order to change the commercial use of the building on the property from "split retail / restaurant" to "automotive sales / retail" and (2) a Building Permit Application to the City of Rockville Inspection Services Division in order to commence construction on the new building. *See id*. ¶ 12, 14.

On October 15, 2012, Plaintiffs submitted their Site Plan Application to the City Planner. Defs'. Mot. to Dismiss, Exhibit F1, ECF No. 23-F1. The Site Plan Application represented that "[t]he existing building is going to be gutted and renovated but not expanded" and that "[t]he proposed automotive sales (retail) use will replace the vacated, approved restaurant use within

---

[2] The majority of the facts are as alleged in the Amended Complaint or the exhibit attached to the Amended Complaint. *See* Fed. R. Civ. P. 10(c). The Court also considers facts drawn from documents attached to Defendants' Motion to Dismiss which are integral to the Complaint and the authenticity of which is not disputed. *See Sec'y of State For Defence v. Trimble Navigation Ltd.*, 484 F.3d 700, 705 (4th Cir. 2007) (citing *Blankenship v. Manchin*, 471 F.3d 523, 526 n.1 (4th Cir. 2006)).

the existing building." *Id*. The Site Plan Application also stated that the owner of the Property

was Robin Tang. *Id*. Attached to the Site Plan Application were building elevation drawings for

the "building renovation." *Id*. On March 21, 2013, the City of Rockville, subject to conditions,[3]

approved a "(Minor) Site Plan Amendment" (application number STP2013-00143). Am. Compl.

¶ 12.

Meanwhile, on February 28, 2013, Plaintiffs submitted a Building Permit Application to

Rockville's Inspection Services Division. Defs'. Mot. to Dismiss, Exhibit D, ECF No. 23-D. The

Project Description in the Application stated: "The Project is a renovation of an existing retail

and restaurant building. The existing building consists of two tenant spaces which will be

demolished and combined into a space for auto sales and associated offices." *Id*. Notably, the

Building Permit Application listed "Priority One Automotive," rather than Robin Tang, as the

Property owner.[4] *Id*. On April 12, 2013, the City of Rockville issued Plaintiffs a Building Permit

(BLD2013-18229) for the Project. *See* Defs'. Mot. to Dismiss, Exhibit E, ECF No. 23-E.[5]

Construction on the site began soon thereafter, and in July 2013, the building on the

Property was razed, except for the cement slab underlying the structure. Am. Compl. ¶ 14. That

same month, Defendants received a letter from Property owner, Robin Tang, stating that: "I

recently learned that BMW has caused the existing structure on the Premises to be substantially

demolished. The demolition of the existing structure was undertaken without my knowledge or

---

[3] A March 21, 2013 letter from the City of Rockville informed Plaintiffs that their Site Plan Application was approved subject to specific conditions relating to the parking lot. Defs'. Mot. to Dismiss, Exhibit F1, ECF No. 23-F1. The letter stated, "[a]pproval of this site plan amendment allows renovation of the existing freestanding 5,025 square foot building to accommodate the sale of automobiles and auto related merchandise." *Id*.

[4] The bottom portion of the Building Permit Application states, "I hereby certify that I have the authority to make the foregoing application, that the application is correct, and that the construction shall conform to the regulations in the Rockville City Code." Defs'. Mot. to Dismiss, Exhibit D, ECF No. 23-D.

[5] The Building Permit lists the "Property Owner" as Robin Tang. Defs'. Mot. to Dismiss, Exhibit E, ECF No. 23-E. It also states, "permit void if zoning ordinance is violated."

approval. I have not approved Tenant's Work presently in progress at the Premises." Defs'. Mot.

to Dismiss, Exhibit C, ECF No. 23-C. Tang also stated, "Please be advised that until further

notice I am withdrawing my consent for BMW or its agents to apply for permits in connection

with the Premises." *Id.*

On July 18, 2013, Chief of Planning for the City of Rockville, R. James Wasilak, met

with Plaintiffs and their lawyer, Stuart R. Barr, Esquire,[6] and discussed the fact that the work

done on the Property did not comply with the Site Plan Amendment. *See* Defs'. Mot. to Dismiss,

Exhibit F2, ECF No. 23-F2. Later that day, Barr sent Wasilak and other City of Rockville

employees an e-mail, saying:

> I want to thank you again for taking the time to meet with *me and our client* on
> short notice earlier today about the 1350 Rockville Pike Project. I had not
> previously worked on this project and became aware of this matter for the first
> time earlier today. I appreciate your patience as I have tried to review everything
> quickly and understand the situation. As I have gathered more information, things
> are starting to become more clear. As I have mentioned, if there is any distinction
> between renovation work and new construction that is explained in the City
> Zoning Ordinance or Code (or anywhere else), I would appreciate reviewing that.
> As you know, I would like to try to help resolve this situation as quickly as
> possible to allow the project to move forward." *Id.* (emphasis supplied).

The following day, July 19, 2013, Robert L. Purkey, Jr., Acting Chief of Inspection

Services for Defendant City of Rockville (and an individual Defendant in this case), issued a

"Suspension of Building Permit – Stop Work Order" (Suspension Letter). Am. Compl. ¶ 15. In

the Suspension Letter, Purkey stated that Property owner Robin Tang had advised the City that

Plaintiffs did not have authority to submit the Building Permit Application. Defs'. Mot. to

Dismiss, Exhibit A, ECF No. 23-A. Purkey's Suspension Letter also said that "[i]n addition to

lacking the Property owner's authority, the scope of work, as submitted for the Building Permit

---

[6] Plaintiffs dispute that Barr represented them in this matter as of that date. *See* Plfs.' Cross. Mot. for
Partial Summary Judgment, 6, ECF No. 26. They do not, however, give any reason why Barr, who had
represented them in their earlier filing with the City, would have had reason to attend the meeting on that
date except as their representative.

is not in compliance with minor site plan amendment STP2013-00143 . . ." *id*, indicating that the Building Permit was being suspended pursuant to City Code Chapter 5, Article 5, Section 105.6(5).[7] *Id.*

The Suspension Letter also indicated that the Building Permit would remain suspended until the Property owner, i.e. Robin Tang, authorized all construction as submitted in obtaining building permit BLD2013-18229, and further advised that "[a] new site plan application must be submitted to, and approved by the City of Rockville." *Id.* The Suspension Letter went on to indicate that "[a] Notice of Violation outlining the specifics of the inconsistences will be issued to Priority One Automotive separately." *Id.* According to Plaintiffs, they never received a separate Notice of Violation. *See* Plfs.' Mot. for Partial Summary Judgment, 8.

At all relevant times in this case, disputed administrative actions by the City of Rockville were appealable to an administrative board.[8] *See* Defs.' Mot. to Dismiss, 13. Specifically, the Rockville City Code, Chapter 5, Article 5, Section 113 provided that "[a]ny person aggrieved by and desirous of challenging a decision of the administrative authority in connection with the interpretation, application, or modification of any provision of this chapter relating to the manner of construction or materials used in connection with the erection, alteration, or repair of a building or structure or system installed therein, shall appeal such decision to a Board of Adjustments and Appeals." Defs'. Mot. to Dismiss, Exhibit B, ECF No. 23-B  Plaintiffs never filed an administrative appeal of the City's Suspension Notice. *See* Plfs.' Mot. for Partial Summary Judgment, 25–29.

---

[7] At the time, Section 105.6(5) permitted the Chief of the Division of Inspection to revoke or suspend a license if "[t]here has been any false statement or misrepresentation as to a material fact in the application or plans on which the permit or application was based." City Code Chapter 5, Article 5, Section 105.6(5). See Defs'. Mot. to Dismiss, Exhibit B, ECF No. 23-B.

[8] The Suspension Letter did not provide Plaintiffs with any information on a right to appeal. *See* Defs'. Mot. to Dismiss, Exhibit A, ECF No. 23-A

Several weeks later, on or about October 9, 2013, Property owner Tang authorized Plaintiffs' proposed construction at the Property site. Am. Compl. ¶ 20.

The City did not, however, immediately lift the Suspension order. On December 23, 2013, Wasilak wrote a letter to Attorney Barr explaining that the continued suspension of the Building Permit was due to the fact that "the prior building was razed to the ground and its structural elements, including the walls and roof, were removed." *Id.* ¶ 21. According to Wasilak, the demolition of the building required a new Site Plan to bring the building in conformity with current zoning laws.[9] *Id.* Plaintiffs dispute that their work on the Building was so extensive that it necessitated a new Site Plan. *Id.* ¶ 22.

Even so, Plaintiffs submitted a new Site Plan Application (STP2014-00205), and on May 16, 2014, the Plan submitted by Plaintiffs was approved, subject to conditions. *Id.* ¶ 23. In approving the new Site Plan Application, the City of Rockville provided additional detail as to why the previous Site Plan STP2013-00143 had been suspended. *Id.* Wasilak told Plaintiffs that "[a]pproval allows the applicant to construct a new freestanding building, replacing the former building on the site that was razed/demolished to its foundational slab. Due to the razing of the building, approval of a Level 1 site plan was required to allow for reconstruction, which was not included in approved Minor Site Plan STP2013-00143." *Id.* Following approval of the new Site

---

[9] A "build to" provision in the City Code required *new* buildings in that area of Rockville to be built at a specific distance from the street. *See* Defs.' Mot. to Dismiss, 8. Because the existing building on the Property was constructed before the "build to" provision was enacted, it could continue in its non-conforming status. *Id*. at 8–9. A "renovation" of the interior of the existing building would not have altered the building's non-conforming status. *Id*. However, under the City Code, after a nonconforming building was demolished and after more than 50 percent of the floor area that included the nonconformity was altered, the right to continue the nonconformity terminated and any new construction would have to comply with the "build-to" requirements. *Id*. Here, according to Wasilak, a new Site Plan Application which complied with the "build-to" provision was therefore required before construction could proceed. *Id*.

Plan Application, the suspension was in effect lifted and construction under the Building Permit resumed. *See* Defs.' Mot. to Dismiss, 16–17.

Rockville Cars, LLC, later joined by Priority 1 Automotive Group, Inc., thereafter filed their original and Amended Complaints in this Court. In the Amended Complaint (ECF No. 21), Plaintiffs assert that they expended considerable amounts of money in rent and costs associated with the Property during the course of Defendants' so-called "suspension." Am. Compl. ¶ 25–26. Plaintiffs submit that the Suspension Letter was not a suspension at all, but rather a revocation or termination of the original July 2013 Building Permit. *Id*. ¶ 27 Accordingly, they have fashioned a violation of due process claim under the Fourteenth Amendment to recover damages. *Id*. ¶ 28–30.

## II. STANDARD OF REVIEW

Federal Rule of Civil Procedure 12(b)(6) governs dismissal of a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). "[T]he purpose of Rule 12(b)(6) is to test the sufficiency of a complaint and not to resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Presley v. City of Charlottesville*, 464 F.3d 480, 483 (4th Cir. 2006) (citation and quotation marks omitted). "[I]n evaluating a Rule 12(b)(6) motion to dismiss, a court accepts all well-pled facts as true and construes these facts in the light most favorable to the plaintiff in weighing the legal sufficiency of the complaint." *Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc.*, 591 F.3d 250, 255 (4th Cir. 2009). The court will also "draw[ ] all reasonable factual inferences from those facts in the plaintiff's favor . . . ." *Edwards v. City of Goldsboro*, 178 F.3d 231, 244 (4th Cir. 1999). But "legal conclusions, elements of a cause of action, and bare assertions devoid of further factual enhancement fail to constitute well-pled facts . . . ." *Nemet Chevrolet*, 591 F.3d at 255. "[A] complaint must contain

'sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.'"
*Id*. (quoting *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009)) (quotation marks omitted). "Facial
plausibility is established once the factual content of a complaint 'allows the court to draw the
reasonable inference that the defendant is liable for the misconduct alleged.'" *Id*. at 256 (quoting
*Iqbal*, 129 S. Ct. at 1949). "[T]he complaint's factual allegations must produce an inference of
liability strong enough to nudge the plaintiff's claims 'across the line from conceivable to
plausible.'" *Id*. (quoting *Iqbal*, 129 S. Ct. at 1952).

## III. ANALYSIS

In order to succeed on a procedural due process claim,[10] a plaintiff must show that (1) it
had a property interest; (2) of which it was deprived; (3) without due process of law. *See Tri
County Paving, Inc. v. Ashe County,* 281 F.3d 430, 436 (4th Cir.2002). *See also Swarthout v.
Cooke*, 562 U.S. 216, 219 (2011). The Court finds, as a matter of law, that Plaintiffs satisfy none
of these elements.

### A.     Plaintiffs Did Not Have a Vested Property Right

"It is well-settled that the Fourteenth Amendment itself does not create property interests.
'Rather, they are created and their dimensions are defined by existing rules or understandings
that stem from an independent source such as state law.'" *Tri County Paving,* Inc., 281 F.3d at
436 (quoting *Bd. of Regents v. Roth,* 408 U.S. 564, 577, 92 S.Ct. 2701, 33 L.Ed.2d 548
(1972). Turning to Maryland law, then, a "vested right [can] only result when a lawful
[building] permit was obtained and the owner, in good faith, has proceeded with such
construction under it." *Rockville Fuel & Feed Co. v. Gaithersburg*, 266 Md. 117, 127, 291 A.2d
672, 677 (1972). Accordingly, a property right only vests upon the issuance of a *lawful* and
*properly-issued* building permit. *See Relay Imp. Ass'n v. Sycamore Realty Co.*, 105 Md. App.

---

[10] This is obviously a procedural, rather than a substantive, due process claim.

701, 725 (1995) ("In Maryland, our strict version of the vested rights rule . . . provides, in effect, that a landowner may rely on nothing other than a properly-issued permit."). In *Baiza v. City of Coll. Park*, 192 Md. App. 321, 334 (2010), the Court of Special Appeals of Maryland held that where a city issued a permit in error because of an applicant's failure to comply with a city ordinance, the applicant never had a lawfully issued building permit, and accordingly never had a vested right. *See also Marzullo v. Kahl*, 366 Md. 158, 193 (2001) (holding that where a permit was improperly issued, it was not a lawful permit, and permittee was not entitled to a vested right); *see also KTK Min. of Virginia, LLC v. City of Selma, Ala.*, 984 F.Supp.2d 1209, 12226 n.11 (S.D. Ala. 2013) ("[W]here a building permit is issued in violation of [a] zoning ordinance, it is invalid, and the permittee acquires no vested rights thereunder and this although the permittee has incurred expense in connection therewith and in reliance thereon.").

Here, by reason of the misrepresentations in the Site Plan Application and the Building Permit Application, Plaintiffs never obtained a lawful building permit and thus never acquired a vested right. In the Site Plan Application, they represented that "[t]he existing building [was] going to be gutted and renovated but not expanded" and that "[t]he proposed automotive sales (retail) use [would] replace the vacated, approved restaurant use within the existing building." But the Site Plan Application made no mention of demolishing or razing the existing building; it explicitly held the project out as a mere renovation. Plaintiffs' failure to disclose the demolition was without question a material omission that could have substantially altered the City Planner's assessment of the Site Plan Application, and could as well have diverted its attention from the applicability of the City of Rockville's "build to" requirement.[11] Therefore, neither the approved (Minor) Site Plan Amendment nor the Building Permit, issued in part because of Defendants'

---

[11] *See* footnote 9.

reliance on the validity of that Site Plan Amendment, was lawful. In view of this, Plaintiffs had no legally vested right to raze the existing building or to build a new one.

To repeat: the Building Permit Application misrepresented that Priority 1 Automotive, rather than Robin Tang, was the owner of the Property. This statement, for whatever reason, quite simply was not true. Yet the certification that Plaintiffs made in the Application expressly affirmed that they had the authority to submit the Building Permit Application and that the application they were submitting was correct. In consequence, the Building Permit, just like the (Minor) Site Plan Amendment, was not properly-issued. Furthermore, the Building Permit expressly provided that the permit was "void if [a] zoning ordinance is violated." In light of the demolition, the "build-to" requirement of the ordinance most certainly would have been violated once Plaintiffs demolished the old building and undertook construction on the new building they had in mind.

Because Plaintiffs did not receive a lawful building permit, they did not have a vested property interest[12] in the construction project, and, as such, had no entitlement to due process protection.[13]

---

[12] The conclusion that a right is not vested where an applicant makes material misstatements is reinforced by *Marzullo v. Kahl*, 366 Md. 158, 193 (2001). In that case, the Court of Appeals of Maryland held that a landowner did not have a vested right in the continued operation of his business where he provided fully truthful information and documentation, but the Baltimore Zoning Commissioner made a mistake in granting him permission to continue operating. The landowner operated a business breeding, raising, and selling reptiles on land zoned to protect water supplies by controlling development in watershed areas (R.C.4 zone). *Id.* at 159. The Baltimore Zoning Commissioner granted him permission to run his business in the R.C.4 zone. However, after many court cases and appeals, the Court of Appeals of Maryland held that the proposed use was not in fact permitted. The landowner asked whether he had "acquired a vested right, pursuant to either the common law or local ordinance, to use the property" for his business. *Id.* The Court of Appeals held that although he "obtained a permit and completed substantial construction[,] . . . he [was] not entitled to have a vested right because . . . the permit was improperly issued." *Id.* at 193. The court reasoned that because the Baltimore Zoning Commissioner had incorrectly determined that the landowner was entitled to run his business, this determination did not give rise to a vested right. *Id.* In *Marzullo*, the landowner did nothing wrong in his pursuit of the permit to operate his business, and was the unfortunate recipient of an "incorrect" ruling by a zoning commissioner. Here, it was Plaintiffs themselves who caused Defendants to incorrectly issue the permit.

The inquiry could very well end here. *See Greenspring Racquet Club, Inc. v. Baltimore Cty., Maryland*, 232 F.3d 887, *7 (4th Cir. 2000) ("If no protected property interest exists, there is no need to consider whether any alleged deprivation of that interest was effected with 'due process.'"). *Accord Bell-Zuccarelli v. City of Gaithersburg*, No. CIV. PJM 14-1306, 2015 WL 1517359, at *4 (D. Md. Mar. 30, 2015). However, in order to tie down loose ends, the Court will consider the second requirement for a valid procedural due process claim.

**B.      Even if Plaintiffs Had a Vested Property Right, they were Not Deprived of it**

Assuming Plaintiffs had a vested property interest in the approved Building Permit, Defendants did not deprive them of that interest. The suspension of the Building Permit was not a "de facto termination" of the Permit. Both in name and function, it was a suspension, nothing more and nothing less. *Cf. Logan v. Zimmerman Brush Co.*, 455 U.S. 422, 433 (1982) (noting that a hearing is "required before the owner is *finally* deprived of a protected property interest") (emphasis supplied).The Suspension Notice stated that, "[t]he suspension may be lifted once the above noted items have been submitted and verified." Indeed, once Plaintiffs obtained Property owner Tang's authorization and submitted a new Site Plan, they were allowed to complete construction under the same Building Permit. Because this was a routine, temporary suspension of construction which could resume when the misrepresentations were corrected, Plaintiffs were

---

[13] Even assuming Plaintiffs had a vested property interest in the Site Plan and Building Permit, they did not have such an interest in the construction of the building, i.e., once the structures were razed and floor area altered. Plaintiffs could not rely on the approved Building Permit (which was based in part on the validity of the Site Plan Amendment) to claim a protected property interest in construction that exceeded the scope of the Site Plan Amendment and Building Permit and implicated the build-to requirements. As such, Plaintiffs had no "legitimate claim of entitlement" to the construction as it was actually performed. *C.f. Bell-Zuccarelli v. City of Gaithersburg*, No. CIV. PJM 14-1306, 2015 WL 1517359, at *6 (D. Md. Mar. 30, 2015) (finding that where plaintiff's structure "far exceeded the scope of the final permit," she had no protected property interest).

not deprived of a protected property interest.[14] *See Talladega Cty. Comm'n v. City of Lincoln*, 2016 WL 5390556, at *7 (N.D. Ala. Sept. 27, 2016) ("[A] pre-deprivation hearing is not required in the case of an 'interim suspension.'") (citing *Barry v. Barchi*, 443 U.S. 55, 64 (1979) (upholding summary suspension of a horse trainer's license without pre-suspension hearing)). *See also Cathedral Church of The Intercessor v. Inc. Vill. of Malverne*, 353 F. Supp. 2d 375, 386 (E.D.N.Y. 2005) (granting defendants' motion to dismiss in part because "the Stop orders were only temporary suspensions from which the Plaintiffs could get relief by satisfying the [defendants'] conditions.").

In any event, Plaintiffs' assertion that "there are no sections of the Rockville City Code that allowed the Defendants to revoke the approval of the building permit" is simply incorrect. The Suspension Letter fully complied with Ordinance 14-12, Section 105.6 of the Code because it was in writing and stated the reasons for the suspension.[15] Specifically, it cited Section 105.6(5), which grants Defendants authority to suspend a permit where there has been a false statement or misrepresentation as to a material fact in the application on which the permit was based. The Suspension Letter clearly set forth that Defendants had determined that "[i]n addition to lacking the Property owner's authority, the scope of the work, as submitted for the Building Permit [was] not in compliance with the site plan . . ."

Accordingly, even if Plaintiffs are presumed to have had a vested property right, Plaintiffs were not unduly deprived of it.

---

[14] The Court accepts that there may be circumstances under which the suspension of a building permit may constitute the deprivation of a property right for purposes of due process, *see Tri County Indus. v. District of Columbia*, 104 F.3d 455, 460–462 (D.C.Cir.1997) (holding that Stop Work order violated procedural due process where it required the "indefinite suspension of a building permit" based on the unconfirmed and inaccurate statement of a Department of Housing representative). Such, however, is not the case here.

[15] Although the Suspension Letter may have created an expectation that Plaintiffs would later receive a Notice of Violation outlining the specific inconsistencies, the Suspension Letter itself stated reasons sufficient to satisfy Ordinance 14-12.

Once again, the inquiry could end at this point. *See Greenspring* 232 F.3d 887, *7 (4th Cir. 2000) ("If no protected property interest exists, there is no need to consider whether any alleged deprivation of that interest was effected with 'due process.'"). *Accord Bell-Zuccarelli v. City of Gaithersburg*, No. CIV. PJM 14-1306, 2015 WL 1517359, at *6 (D. Md. Mar. 30, 2015). *See also Wilkinson v. Austin*, 545 U.S. 209, 221, 125 S. Ct. 2384, 2393, 162 L. Ed. 2d 174 (2005) ("We need reach the question of what process is due only if the inmates establish a constitutionally protected liberty interest."). However, so there can be no mistake, the Court will consider whether the suspension occurred without due process.

## C.     Even if Plaintiffs Had a Vested Property Right that they were Deprived of, they Were Still Afforded Due Process

Assuming, arguendo, that Plaintiffs had a vested property right and that Defendants deprived them of that interest, their suit would still be dismissible because Defendants afforded them all the process they were due.

"Due process of law generally requires that a deprivation of property be preceded by notice and opportunity for hearing appropriate to the nature of the case. However, to determine whether a procedural due process violation has occurred, courts must consult the entire panoply of pre-deprivation and post-deprivation process provided by the state." *Tri–County Paving, Inc. v. Ashe County*, 281 F.3d 430, 436 (4th Cir. 2002). "[T]he formality and procedural requisites for the hearing can vary, depending upon the importance of the interests involved and the nature of the subsequent proceedings." *Cleveland Board of Ed. v. Loudermill*, 470 U.S. 532, 545, 105 S.Ct. 1487, 1495 (1985) (quoting *Boddie v. Connecticut,* 401 U.S. 371, 378, 91 S.Ct. 780, 786, 28 L.Ed.2d 113 (1971)). "The timing, content of the notice and the form of the hearing will depend upon a proper balancing of the competing interests involved." *Garraghty v. Jordan*, 830

F.2d 1295, 1300 (4th Cir. 1987).[16] "The procedures due in zoning cases and by analogy due in

cases . . . involving regulation of land use through general police powers, *are not extensive*." *Tri–*

*County Paving*, 281 F.3d at 436 (emphasis supplied).

In the present case, because the alleged deprivation of Plaintiffs' supposed property

interest concerned the regulation of land use, the suspension required only a minimal amount of

process.[17] Plaintiffs received such process here. Due process was afforded whether or not the

July 18, 2013 meeting is considered a pre-deprivation hearing or merely an impromptu

discussion.[18] Although the exact content and nature of the meeting remains unknown, "[w]hen

post-[deprivation] administrative procedures are afforded, such pre[-deprivation] procedure

functions only as 'an initial check against mistaken decisions – essentially a determination of

whether there are reasonable grounds to believe that the charges against the [person] are true and

support the proposed action.'" *Linton v. Frederick County Bd of Commissioners*, 964 F.2d 1436,

1439 (4th Cir.1992) (quoting *Loudermill*, 470 U.S. at 545-46). Because, as will be mentioned in

a moment, Plaintiffs were afforded post-deprivation procedures, the pre-deprivation process did

not need to resolve the propriety of the suspension; it needed only apprise Plaintiffs of the nature

---

[16] Applying the *Loudermill* factors asserted by Plaintiffs—(a) BMW of Rockville's interest in its building permit, (b) the government's interest in an expeditious suspension of building permits, (c) the government's interest in the avoidance of undue administrative or fiscal burdens, and (d) the risk of an erroneous deprivation of BMW of Rockville's interest—the Court arrives at the same result: the process provided by Defendants was adequate.

[17] While Plaintiffs emphasize the considerable monetary effects that the suspension had on them, they fail to deal with the distinction between the effects of the suspension on them and the importance of the public interest in regulating the underlying construction project.

[18] At the motion to dismiss stage, the Court must ordinarily accept the facts as alleged by Plaintiffs. However, Plaintiffs' claim that Barr did not represent them at the July 18, 2013 meeting flies in the face of Barr's e-mail to Wasilak and others on the very same day, referring to Plaintiffs' as "our client." But even if it could be fairly disputed that Barr did not represent Plaintiffs on that day—a highly doubtful proposition—in light of the letter from Tang stating that the demolition was conducted without his authorization, Defendants could reasonably have believed that quick action was necessary. Post-deprivation process was still available, and was still adequate. *See Zinermon v. Burch*, 494 U.S. 113, 132 (1990) ("Providing only post-deprivation process is constitutionally inadequate absent the necessity of quick action by the State or the impracticality of providing any predeprivation process.").

of the charges and of the general claims against them. *See id.* (citing *Loudermill*, 470 U.S. at 545). The July 18, 2013 e-mail from Plaintiffs' attorney Barr clearly demonstrates that he understood the issues underlying the imminent suspension (i.e., the distinction between renovation work and new construction). By extension, Plaintiffs also understood them.

Moreover, appropriate post-deprivation process was always available to Plaintiffs through the constitutionally sufficient administrative appeal process provided by the Rockville City Code. As previously indicated, Rockville City Code, Chapter 5, Article 5, Section 113 permitted "[a]ny person aggrieved by and desirous of challenging a decision of the administrative authority in connection with the interpretation, application, or modification of any provision of this chapter relating to the manner of construction or materials used in connection with the erection, alteration, or repair of a building or structure or system installed therein, [to] appeal such decision to a Board of Adjustments and Appeals." Plaintiffs' suggestion that the Rockville Code did not advise them of their right to appeal, or alternatively that the seven day window to appeal was not adequate, is hardly persuasive. Had Plaintiffs been advised by Defendants that no such appeal could be taken or had they otherwise been somehow blocked from appealing, their argument might be more plausible. Standing alone, however, Plaintiffs' subjective belief that no right to appeal existed cuts no ice at all.

Beyond that, Plaintiffs always had the option of turning to Maryland's state courts to dispute the adequacy of the appeal process. But Plaintiffs apparently gave the matter little or no thought. That circumstance also undercuts their claim. *See Mora v. City of Gaithersburg*, 519 F.3d 216, 230 (2008) ("[Plaintiff] cannot plausibly claim that Maryland's procedures are unfair when he has not tried to avail himself of them. The state courts are open to him. [The plaintiff] simply found it unnecessary even to enter upon, let alone travel the entire length of, that road.").

*See also Mora v. City of Gaithersburg*, 462 F. Supp. 2d 675, 695 (D. Md. 2006) ("[I]t is clear that at all times Mora has had recourse to Maryland's circuit courts and/or its district courts to secure return of his property . . . Certainly Maryland circuit courts, in the exercise of their general jurisdiction . . . or district courts in the exercise of their replevin jurisdiction could entertain Mora's claim and order immediate return of the detained property rightfully taken and wrongfully detained."). *Cf. Tri Cty. Paving, Inc. v. Ashe Cty.*, 281 F.3d 430, 438 (4th Cir. 2002) ("Additionally, [plaintiff] had remedies available to it in the state courts but chose not to utilize them. For example, [it] could have petitioned a state court for a writ of mandamus to compel the County to issue a building permit if it was unlawfully withheld" or "filed an inverse condemnation suit in state court. [Plaintiff] chose not to pursue any of these avenues of relief in the state courts. It therefore cannot complain now that the state did not provide adequate procedures.").

## IV. CONCLUSION

For the foregoing reasons, Defendants' Motion to Dismiss (ECF No. 23) is **GRANTED**. Plaintiffs' suit will be **DISMISSED WITH PREJUDICE**. Plaintiffs' Cross-Motion for Partial Summary Judgment and Motion for Discovery (ECF No. 26) will be **DENIED**. A separate Order will **ISSUE**.


                                                          **/s/**
                                                    **PETER J. MESSITTE**
                                              **UNITED STATES DISTRICT JUDGE**
**January 4, 2017**